**648**

Florence D. FLORA, Appellant,

v.

Grant MILLS, Appellee.

No. 4632.

Court of Civil Appeals of Texas.

Waco.

July 27, 1967.

Rehearing Denied Aug. 17, 1967.

Sam Lee, Angleton, Bob S. Owen, Alvin, Hardy, Galindo & Sharpe, Thomas G. Sharpe, Jr., Brownsville, for appellant.

Jack Price, Longview, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant, Florence Flora, from a judgment decreeing a ranching partnership between her and plaintiff, Grant Mills, from June 11, 1954 to May 26, 1963, decreeing plaintiff judgment against defendant for $69,788.83; and ordering appointment of an auditor.

Plaintiff Mills brought suit against his mother, defendant Flora, alleging that on or about June 11, 1954 they made a verbal agreement whereby they entered into a ranching partnership in Brazoria County; that plaintiff was to supervise the cattle and their increase; and bind himself by signing a guarantee of renewal notes of defendant with Houston Agricultural Credit Association for $15,000. Plaintiff further alleged defendant was to furnish 176 cows and bulls and 71 heifers and 77 acres of land; and that plaintiff was to receive an undivided one-half interest in all assets of the partnership; that the partnership continued until May 26, 1963 when defendant caused plaintiff to withdraw from the management of the partnership. Plaintiff alleged his interest was of the approximate value of $60,000., and prayed for the appointment of an auditor and receiver, and for general relief.

Defendant filed verified denial of the existence of any partnership between herself and plaintiff.

Trial was to a jury which, in answer to special issues submitted, found:

1) On or about June 11, 1954, plaintiff and defendant entered into a verbal agreement to form a ranching partnership.

2) The profits were to be divided fifty-fifty.

3) As of May 26, 1963 the reasonable market value of the assets of the partnership was: cattle—$79,210.; land —$45,300.; cash—$11,721.; equipment —$12,295. (total $148,526.)

4) The liabilities of the partnership as of May 26, 1963 were $12,000.

5) Plaintiff contributed $3061.54 to the operation of the ranching business from June 11, 1954 to May 26, 1963.

6) Plaintiff rendered $16,555.75 worth of services to the cattle ranching business between June 11, 1954 and May 26, 1963.

7) Defendant wrongfully terminated the partnership between herself and plaintiff.

8) Plaintiff sustained no damage by reason of such wrongful termination.

The trial court entered judgment establishing the partnership existing since June 11, 1954 and found it was terminated by the wrongful act of defendant on May 26, 1963; found the net assets to be of a value of $136,526.13 ($148,526.13 less debts of $12,-000 = $136,526.13). The judgment awarded plaintiff the $3061.54 he contributed plus $66,727.29 totalling $69,788.83, together with interest from May 26, 1963; and ordered the appointment of an auditor to determine withdrawals of profits by defendant between June 11, 1954 and May 26, 1963, and the amount of profits after May 26, 1963.

Defendant appeals, contending, among other things, that the evidence is insufficient to establish a partnership between defendant and plaintiff commencing on or about June 11, 1954. We sustain the contention.

Plaintiff is the son of defendant; defendant's husband died prior to June 11, 1954; defendant owned 77 acres and some 244 head of cattle, (subject to a debt of $15,000); and had been engaged with her husband in ranching.

Plaintiff testified he and defendant verbally entered into a ranching partnership on June 11, 1954, whereby he was to guarantee the $15,000 note at the Houston Agricultural Credit Corporation; was to help defendant look after the cattle on evenings and weekends, and that profits were to be shared fifty-fifty; that defend-

ant's cattle were to form the nucleus of the partnership herd and everything accumulated thereafter would become partnership assets; that he signed a guarantee of the note at the Credit Corporation, looked after the cattle on evenings and weekends; that the partnership purchased some 111 acres additional land and by 1963 had assets of net value of approximately $134,000.

Defendant denied entering into a ranching partnership with plaintiff in 1954; but testified she and plaintiff entered into a partnership in July, 1961 with the purchase of 100 cattle called the Wet Moon Cattle; testified that plaintiff did help her on the ranch occasionally in the evenings and on weekends before 1961; that plaintiff sometimes paid for ranch labor, but that she reimbursed him for such payments.

The record reflects plaintiff and defendant had no written partnership agreement; that plaintiff never told his brother of the partnership; that plaintiff was incapacitated, due to an injury, from October, 1954 to November, 1955, and that he was a full-time student at the University of Houston from 1956 to 1958; that he went to work for an accounting firm in 1958 and worked for them to December 1, 1961. All lands acquired were acquired in defendant's name. No partnership Income Tax Returns were filed for 1954, 1955, 1956, 1957, 1958, 1959 and 1960; and plaintiff's income tax return for the years 1954 through 1960 reflected no income or loss based on the asserted partnership. After the Wet Moon Cattle Partnership was formed between plaintiff and defendant in 1961, plaintiff and defendant filed a partnership return for the years 1961 and 1962.

Defendant deposited $10,000 in the Gibraltar Savings and Loan on January 25, 1960, and made payable to defendant or plaintiff as joint tenants with right of survivorship.

Defendant reimbursed plaintiff for expenses he paid in the sum of $2713.58, (checks being in evidence), and gave plain-

tiff ¾ acre for a homesite and drilled a well on same at a cost of $438.25.

Neighbors saw plaintiff and defendant both working on the ranch at various times, and the testimony differs as to which was the best cowhand. Defendant's son, Joe, likewise helped on the ranch at various times.

The president of the Houston Agricultural Credit Corporation testified his organization had not taken a guarantee from plaintiff on defendant's note, and looked solely to defendant for payment of the note; further it was the corporation's policy to require a partnership agreement, if business were to be conducted with a partnership; and that no agreement was on file with his company; that a financial statement is required of a guarantor if a guarantee is executed, and that no such statement on plaintiff was present in the company's files.

All cattle purchases from 1954 to July 1, 1961 were made in the name of defendant; the parties had no partnership bank account for the years 1954 through 1960; and, as noted, no partnership income tax returns were filed until 1961, when partnership returns on the admitted Wet Moon Cattle partnership between plaintiff and defendant were filed.

Plaintiff admittedly has an interest in the Wet Moon Cattle operation which commenced in 1961, but there has been no accounting as to assets and liabilities of this operation.

A number of persons related to both plaintiff and defendant testified they had never heard plaintiff and defendant were ranching partners between 1954 and 1961. No unrelated third parties testified there was a holding out of a partnership between 1954 and 1961. No firm books evidencing a partnership from 1954 to 1961 are in evidence; all cattle sales prior to the admitted Wet Moon partnership in 1961 were in defendant's name only (with one exception), and all land and cattle purchased were purchased in defendant's name.

We have carefully examined the record, and conclude from the record as a whole that the evidence is factually insufficient to establish that plaintiff and defendant verbally entered into a ranching partnership on June 11, 1954.

Reversed and remanded.